May it please the Court, my name is Jody Thorpe and I represent Mr. Raymond Lozano. This Court should remand Mr. Lozano's 20-year sentence to the District Court because California's false imprisonment statute is not a predicate crime of violence for the career offender guideline. I'll first discuss how false imprisonment under California is not categorically a crime of violence, and then I'll address a number of other issues. I'll also discuss how the case, it should not get to the modified categorical approach, but if it were to get to the modified categorical approach, otherwise would fail the modified categorical approach. Let me ask you a couple of questions before you begin, just to put this in perspective. As I understand it then, what you're really suggesting as to the career offender statute, we know have no problem with the defendant being at least 18 years old. At the time he committed the crime. That's correct. And there's no problem that the instance of offense is a felony that is either a crime of violence or controlled substance offense. That's correct. And it's no question that the defendant has committed at least one prior felony conviction of a crime of violence or controlled substance offense. That's correct. And so we're really down to focusing in on whether the second crime, which is false imprisonment, which is false imprisonment as I understand it, a conviction not only under the 236 but 237 category of false imprisonment. It is, Your Honor. 237 is what renders it a felony in California. Yes. And so we're really talking whether that is a felony conviction which can be a crime of violence. That's correct. And you're going to tell us why it categorically is or isn't. Why it is categorically not a crime of violence, Your Honor. Thank you. That's what I understand. First of all, in United States v. Breguet, the Supreme Court noted that for, in looking at the armed prayer criminal statute, the Supreme Court noted that we need to have two things. The offense must be similar to the enumerated offenses, and those offenses that are enumerated are burglary, arson, extortion, and crimes involving the use of explosives. Secondly, under Breguet, the court indicated then the conduct must include purposeful, violent, and aggressive conduct. When you look at Breguet, the – Are we really looking at the armed career – the ACCA case here? Are we looking at California's statute, not the armed career statute? Your Honor, Breguet applies to – here we're looking at the career offender guideline 4B1.2. Breguet addressed the – Breguet addressed the armed career criminal act. However, the armed career criminal act, the provision addressed in the – But I thought what we were really looking at here is whether the California statute, 236.237, is the same as a generic statute. And the generic is laid out. Well, the – first of all, we would have to – before getting there, we have to look at Breguet, which shows the enumerated offenses. And one of the enumerated offenses is not false – the generic false imprisonment. So because it's not enumerated, it's our argument that we don't even get further under Breguet. So should we get further than looking at the generic offense of false imprisonment, California is – is missing an element of the generic version of false imprisonment, in addition to the fact that it's – it's overbroad. It includes conduct that is not violent. Going back to Breguet, it's not just – after – we – basically, it's not categorical under Breguet because it's not similar. Even if you meet the similar prong to the – similar to those four enumerated offenses, we then have to look to see whether the conduct is purposeful, violent, and aggressive. And in United States v. Christensen, this court determined that all three – that Breguet requires that all three of those prongs be met. What we have here is a California statute that does not require that the conduct be purposeful, violent, and aggressive. When – Counsel, I have a question. This is Judge Rawlinson. So it's your argument that Breguet controls our interpretation of guideline section 4B1.1? It is, Your Honor, and there are several reasons why. First of all, the – the residual provision of 4B1.1 that defines the scope of the residual clause is identical to the Armed Career Criminal Act that Breguet used. So in failing to extend – extend Breguet to the career offender guideline, which is basically the identical language, would make it more difficult and complex to – to apply. Now, do we have a case that says that we apply the same analysis to 4B1.1 career offender as we do under the Armed Career Criminal Act? Do we have a case that says that? Yes, Your Honor. This court's already held that the residual provisions of the Armed Career Criminal Act and 4B1.2 are to be treated identical. And that's United States v. Longstaff, 993 F. 2nd, 180. But – Well, that talked about a crime of violence. That was a crime of violence determination, right? Yes, Your Honor. What they were really showing, weren't they, is that they were saying that the Armed Career ACCA was a crime of violence. That's what they were really trying to find, wasn't it? And all I'm – all I'm asking you is, are we really looking at whether the California statute is a crime of violence? And what is a crime of violence? Well, we've got two ways to prove it. One, it is either an element of the use, attempted use, and threatened use of physical force. Or two, it is conduct that presents serious potential risk of physical injury. Well, when looking at those two prongs, the – this court in Hernandez already determined that the first – that the language from the residual clause would fail. Although that was a case that dealt with immigration, the immigration guideline, it's already held that California is overbroad with respect to that. When you get to the residual clause, then, it's not just because it posed a serious potential risk of physical injury to another. We also have to meet the requirements of Breguet. But let's say this court were to determine that Breguet would apply – would not apply, although the Seventh Circuit has held that it applies. And I think this court in Christensen suggested that it would apply as well. Even if this court were to go on to look at the conduct in the California statute, the conduct in the California statute does not necessarily present a serious potential risk of physical injury to another. The – What conduct? The false imprisonment does not require conduct. Why? Well, it includes fraud. It includes deceit. All right. So you're really suggesting, then, that because the California statute includes fraud and deceit, that it does not equal categorically crime of violence, correct? That's true, Your Honor. But it also includes – Let me ask you a question, which is very important. So think about it. Is it a different crime if it's a – if it's a false imprisonment by violence? A different crime if it's a false imprisonment by fraud? A different crime if it's a false imprisonment by menace? And a different crime if it's a false imprisonment by deceit? Well, Your Honor, it's one statute that can be violated in four different ways. So Judge Smith gave you a case, which I looked at, too. I think what he's saying, what elements do you have to prove of the crime? And if you're going to be convicted of false imprisonment. That there was an unlawful violation of someone's personal liberty, and that there was a threat of harm, and that threat can be expressed or implied or by word or act. When you look at – And by what? And by either? For it to be a felony, then it would be perpetrated by violence, menace, fraud, or deceit. But it's still one crime. So the government – the prosecution would have to show one of the four. Pardon me, Your Honor? I'm not sure where this comes out. But so you're saying the generic crime would have to show – generic felony crime, I guess, of false imprisonment. The prosecution need only show one of the four means. Right. But it's all one crime? I'm asking you, is it a different crime of false imprisonment if it is menace than it is if it's fraud? Because two of them may not be violent. Well, three of them may not be violent. Also, under menace, there is not – menace does not require violence either. So we actually have three out of the four that do not necessarily require violence. I've seen false imprisonment prosecutions where someone just held someone in a bathroom or something and didn't – against their will. That's correct, Your Honor. Maybe scared them. Maybe threatened them. Well, there's also instances where somebody was threatened with harm to property. These are instances in California where someone was threatened to have their children removed or someone was threatened to be arrested. So there are false imprisonment – even that are false imprisonment by menace cases that do not include violence. So out of the four – So then you're suggesting because they do not that we do not have a categorical match. That's correct, Your Honor. If we don't have a categorical match, can we even look at a modified categorical? Your Honor, it's my position that no. Why? We cannot get to the modified categorical approach. Because we're – when you look at the generic definition of false imprisonment – and by the way, when you look at the model penal code definition of false imprisonment, they consider – the model penal code considered false imprisonment to be the least severe of – the least serious conduct. And when you look to that, it requires – Least serious in what respect, counsel? The least serious of the conduct that was laid out in 212.2 of the model penal code. So it essentially starts with the most serious conduct, which would be kidnapping, then goes to an intermediate conduct, and then ends with false imprisonment, which is considered to be the least severe. In the model penal code, it's knowingly restraining a person unlawfully in interfering with his liberty. When you get to – when you look at each of the ways in which the – there can be a violation of the statute by violence, by menace, by fraud, or by deceit, sometimes in California courts, they have combined them. But counsel – this is Judge Rawlinson – doesn't it meet the model penal code definition, though? Well, Your Honor, it doesn't – the only reason the model penal code definition – we're missing the knowingly component in California. In California, it's a general intent crime. We're missing that knowingly component. However, what we have here is that we don't even need to go back and forth between the generic crime and false imprisonment, because there's nothing that says that false imprisonment, even the generic definition, would satisfy the categorical approach. So it's our – Well, just a minute. Let me ask you a question. Even if it doesn't satisfy the generic, if this crime does not satisfy the generic, then you're saying we cannot do a categorical approach. Why didn't you say that to the district judge? I saw nothing in this record that suggested that you said to the district judge, there's no categorical match here, and therefore you cannot – you cannot even think about modified categorical. Well, Your Honor, I wasn't the attorney at the district court level. I don't have an answer for why that wasn't raised. However, I do think it's significant. Is that important? It is important, but I think it's significant. Is it important that nothing was said? No. No, it's not important, because the district court didn't even – wasn't even really able to make a determination herself as to whether it was categorical or modified. She ended up, I believe – Well, she only used the modified categorical. Right. She ended up deciding on the modified categorical approach. She didn't really make a finding as to whether there was a generic match. No, she didn't. That's what we're trying to figure out. No, she did not make that finding. She – the court made the finding that she would move on to the modified categorical approach and then indicated that it doesn't – that it did satisfy the modified categorical approach. And after having gotten to the modified categorical, she then suggested that the threat of harm equaled the threat of physical force. Isn't that what she was really – isn't that what she really determined? That the threat of harm equaled the serious potential risk of physical injury or the threat of physical force? I think she did make that determination, and that is just one of the reasons why the district court erred in this case. Did she determine that it could equal the threat of physical force, or did she go to the second prong? Because the first prong is the use of physical force. Well, Your Honor, I think at the district court level, the government agreed that – that it did not equal the threat – I'm sorry, the government agreed that it did not equal the threat of physical force. So we really – the district court was only – was only really looking at serious potential risk of physical injury. Correct, Your Honor. And you're arguing that menace or the threat of harm does not equal that. Yes, Your Honor. And when you look at the California case law, there are cases where menace does not equal a serious potential for physical harm. But, counsel, when we're looking at the modified categorical approach, we can look at the actual documents in this case to determine whether or not there was the threat of physical force, right? Yes. When – if you get to the modified categorical approach, the facts that the parties agree are the judicially noticeable facts are that Mr. Lozano did unlawfully violate the personal liberty of Maria Gamboa by menace while aiding a third party. Those are the only facts that the court can consider in addressing the modified categorical approach. When you look to the definition of menace, there are numerous reasons why – that address why menace would not be a – necessarily have a serious potential for violence. Counsel, you're way over your time. Why don't we hear from the government? Practically doubled your time. But thank you. Can we just get to the heart of this? So can we – are we at liberty to review this under the modified categorical approach at all? I believe you are, Your Honor. And Mark – good morning. Mark Rahe for the United States. I intended to spend more of my time arguing the categorical, but to get right to the question, you can. I am familiar with the Navarro-Lopez case that gets litigated frequently in our district. The way I would read Navarro-Lopez, it says – it's a two-part test. If your statute of conviction is missing an element altogether, you don't get to the modified. But if its elements are broader, then you can. Now, in this case, I believe there are two ways that the elements, at worst, are broader. And as Judge Smith pointed out, we're looking at two thresholds here to be a crime of violence. Either it has as an element attempted use or threatened use of force, or it otherwise involves a serious potential risk of injury. Now, under the first test, we concede, and this is what our concession below was, that insofar as there are four separate ways of committing this crime, it won't always necessarily include force as an element. So it's not categorically a crime of violence? Not in that sense, under that definition. Not under Carl I. Not under Carl I. But then the question under Navarro-Lopez is, okay, in what way is it overbroad? Is it overbroad because it's missing something altogether, or it's simply broader? Well, we would say here it's not missing something altogether. First of all, by violence is one of the – is the first of the four ways to commit the crime. Under California law, violence is defined as force beyond that which is necessary for the restraint. That, by definition, is force against a person. So we would say, you know, whatever this Court ends up finding about this case, don't foreclose this statute forever from the modified, because that's one way where it's simply broader then. Now, the other way, going to the serious risk of injury, this is where it gets a little fuzzier because that is sort of an inherently probabilistic concept. And just a month ago, the Supreme Court ruled in the Nijuan v. Holder case, they make a distinction between categorical offense where the crimes are listed as generic offenses or where they are circumstance-specific. Now, we would argue in this case, when it says burglary, extortion, use of explosives, arson, or otherwise involves conduct that presents a risk, that that means circumstance-specific language. Now, it's interesting. In the Nijuan case, they say – well, they actually reject that argument with respect to ACCA, the Armed Career Criminal Act. And here's where I – I mean, it gets a little more sophisticated, but I hope this argument carries the day. Here's where there's a very big difference between ACCA and 4B1.2. ACCA is just a statute. It has no interpretive commentary or any kind of guidelines. When you look at the commentary for this particular subsection of the career offender, 4B1.2, I believe it's the third paragraph that says – it starts talking – it defines what crime of violence includes. And it gives a laundry list of cases that's actually greater than that in ACCA. And then it goes on to say other offenses are included if, A, and it sets forth the elements test, but then, B, and this is where I would direct your attention, it says, the conduct set forth, and then in parenthesis, i.e., expressly charged, in the crime of which the defendant was convicted involved the use of explosives or by its nature presented a serious potential risk of physical injury to another. Now, with that language, which isn't present in ACCA, it is specifically saying you can look to the charged conduct. And I would say, then, that is what makes this statute different. It's not a statute. It's a guideline. I mean, I think we'd all agree that whether the categorical, the modified categorical, is not a question of constitutional interpretation. It's statutory. It's been the rule since Taylor, whenever this Court reads cases with the modified or anything having to do with Taylor, you often see this phrase, we don't look to the conduct, we don't look to the facts. And sometimes it kind of seems like you do when you apply the modified. I think this Court would agree, if Congress were to come forward and say, you know what, you can look at what specifically was charged, then the rules would change. Well, here, and what are we we're talking about effectuating the intent of the sentencing commission. They have specifically said in that application note that you can look at the conduct charge. So I would say. I guess this is my worry. If I read Navarro-Lopez, and it's certainly that Navarro-Lopez is something our Court has struggled with since it was written. When I read Navarro-Lopez, it suggests that the only time that I can go to the modified categorical approach is when the statute is divisible into certain crimes, some of which may involve, in that instance, moral turpitude. So what worries me in this particular matter is it doesn't seem to me that this is a different crime. It doesn't seem to me that the crime of false imprisonment by menace is any different than the crime of false imprisonment by fraud or by deceit or by violence. And my worry is that if I can prove the felony crime of false imprisonment by not having to prove that there's any violence, all I have to show is there's deceit, then Navarro-Lopez would say I can't go to the modified categorical approach because you can get through the categorical approach and never have to prove any violence. Now, we might not necessarily agree with that, that the language seems broad enough. All I'm trying to do is have you concentrate on the question. I'm not saying I agree with it. I'm being the devil's advocate. But the bottom line is I know there are some who would argue that very point. And so at that point, if you don't meet the categorical because you've got deceit and you have to prove the felony crime of false imprisonment by not having to prove that there's any violence, you can't go to that instance. So you don't meet the match, because that we're only looking at the statutes. And if, in fact, you can prove a set of circumstances that don't meet that categorical approach, it seems to me that Navarro-Lopez suggests I can't even look at the categorical part that says when it's divisible. And I believe that the language in Navarro-Lopez may say divisible into different crimes. That's what it says. But I have seen other language, and I think even post-Navarro, and I'll look at this when I get back, which says when a statute lists disjunctive ways of committing it, that is another way, where that's another paradigm for applying law. Does that make them separate crimes? When there's disjunctive ways of committing it, does that make them separate crimes? And that is a great question. I mean, I will assume the answer that makes them more limited. I will just assume that it is still one crime, but there's more than one way of proving it. And, you know, we find this. Well, that's the worry, because if there is more than one way to prove it, it seems to me by going down through the analysis in Navarro-Lopez, which was thrown in at the end, and it's even caught some of us by surprise, I'll just be fair, that we then say if you can prove it by some other way, then what is absolutely the generic? You can't go to modified categorical at all. And my worry, I guess, is that if I look at your cases that you have, it seems to me that Williams, which is where you want to go, that Williams itself uses a modified categorical approach to give, to allow us to suggest that kidnapping in the second degree is, in fact, a crime of violence. But it was before Navarro-Lopez, and they adopted, they went right to the information and made their decision, which is what, frankly, I did in another case, which I've now had it suggested I didn't know what I was doing. And also in Hernandez-Hernandez, it really doesn't control, because Hernandez-Hernandez certainly suggests that under this particular statute, the parties were agreeing to certain things. Right. That's what's in footnote 5. But no court ever said it. And, in fact, the court really said, you cannot get to the modified under false imprisonment alone, 236. Unless you have 237, you can't get there at all. And the only part of 237 that really matters is the violence and the menace. If we have to take those other two parts, we're hit. So that's when I looked at Navarro-Lopez, and I said, are they really all crimes, or are they one crime, four different ways? And if they're one crime, four different ways, can I really get to the modified categorical? Let me talk about it. I'm glad you brought up Hernandez-Hernandez. Hernandez-Hernandez was under the guideline 201.2. A very fundamental distinction is it does not have that otherwise involved serious risk of injury. Exactly. Okay. So I think we're on the same page with that. But, again, with Navarro-Lopez, and I understand it is problematic. We fight it. We have this whole ongoing war about California burglary, whether it requires an unlawful entry or not. That statute is not divisible either by subsections or disjunctive in its language. But like I said, I don't think Navarro-Lopez has to be read that narrowly, because the point is, and as it's been applied in later cases, again, it says if you're missing an element altogether, you can't apply it, but if you're simply broader, you can. So by definition, the broader context will involve cases that don't necessarily involve whatever your threshold is here that you support. So I don't think it has to be read that narrowly. And, again, the language in the commentary, 4B1.2, the sentencing commission specifically says, look to the conduct that's expressly charged. That language isn't present in ACCA, and that's circumstance specific. Well, the reason I wanted you to talk about this, and I would suggest to my good colleagues that you both have a chance to brief this even more than just talk to us, is that unless you want to come, unless we make the right decision here, you two are going to come back. I hear you. Unless the en banc gets another dissent from en banc from the chief judge who dissented in mayor with a very virulent dissent. That's all I'm telling you. So the other question I think that needs further briefing is this whole question of menace itself. I mean, menace to me, I mean, on this record, he's charged with false imprisonment by menace, and he pleads guilty to false imprisonment by menace. And so the question is, is that menace itself could both be something that could pose a serious potential risk of injury to someone and not? Even as it's defined in California law, I mean, it also, as a word, and the convictions could be something that had a serious risk of physical injury or not. Well, maybe. And this is the stuff I really was hoping to talk about. I mean, and I was thinking about Meyer, and you look at James. First of all, you look to the ordinary case, and what this is is a serious potential risk. James, the United States Supreme Court said those are two inherently probabilistic concepts. So I think it's important to note at the outset what it is that we need to prove. And I think the defense is setting the bar much too high. We're not saying they're per se a crime of violence, where we pretty much have to show everything. I think it's pretty clear that it's not. Yeah. You know, we're saying otherwise. And you know what? When I submitted that Rule 28J, my opponent says it can be a threat to property. I haven't seen such a case. This statute was enacted, this second sentence, since 1901. We found that Calcrim, when the Judicial Council went into effect in 2006, in that 105 years, they found one reported case by fraud or deceit. We ran our own research. The defense has been free to do the same. We found one unpublished. That doesn't sound like the ordinary case to me, though. And that's half of these four means. Then we looked at menace. The California Court of Appeal, we included a survey. They say it generally typically involves either use of a deadly weapon or threat of harm. Now, granted, they say threat of harm. It doesn't say threat of physical harm. I even looked at these. You know, when you look at the annotations, the 236 and 237, they're not that big. I looked through. I don't see a single case in there, though, where it says, you know what, I'm going to leave your bank account. Well, what about, I mean, there could be a lot of cases. For example, there was an actual case where someone threatened to go use somebody's ATM if they didn't stay enclosed or they actually went and used the ATM. And that's not physical harm. That's financial harm. Okay. You know, what I say, though, again, compared to burglary, I think another thing where we're sort of under a false assumption here is that the means of affecting the restraint have to be violent or were out the door. That's not true. All it says in its broad language is that it seriously involves a risk. Look at burglary, which everybody agrees falls within this. There are cases where oftentimes burglary isn't affected by violent means. Typically, it's on a sunny, beautiful day like this when nobody's even home. And yet, why is it consistently held to be a crime of violence? It's the dwelling. Because of the risk. The risk of entering someone else's home. You know what, I find this is very fascinating intellectually, right? So we could talk about it all day. But I think what we really should do is get supplemental briefs and we can submit the case and let us go back and talk amongst ourselves, and we'll issue an order getting supplemental briefs on this. And I suppose another possibility at some point is we might have to do a sous-vendée en banc just to clarify our laws, since it's causing so much trouble for you and the district courts. So let's just submit this case for today, and you'll be hearing from us. All right. Thank you very much, counsel. And frankly, counsel, both of you, and especially counsel for the prosecution here, you have really had this undermined and you understand the problem, and I think counsel understood to some extent where we were going. We really appreciate your input here, because we are on the cusp here. This is a big deal, and we have a lot of cases out there, and I know very well our circuit looks very hard at this very issue. So I really appreciate the way you have briefed and made your argument here. Very much. Thank you. Thank you. And this session of the court will be adjourned for today. Thank you very much, counsel. All right. This session is now adjourned.
judges: Wardlaw, Rawlinson, Smith N. R.